IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| RAFAEL L. RAMIREZ and | ) | |
| YOLANDITA L. MALAVE, individually, | ) | |
| and as the anticipated Administrators of | ) | JURY TRIAL DEMANDED |
| the ESTATE OF RAPHAEL ESTEBAN | ) | |
| RAMIREZ | ) | |
|       Plaintiffs, | ) | |
| | ) | CIVIL ACTION NO. |
| v. | ) | |
| | ) | |
| G6 HOSPITALITY LLC and/or | ) | |
| MOTEL 6 OPERATING L.P. d/b/a/ | ) | |
| MOTEL 6; THE CITY OF MARIETTA, | ) | |
| GEORGIA;  AMELIA HINES, in her | ) | |
| individual capacity; JARED FOSTER, | ) | |
| in his individual capacity | ) | |

## COMPLAINT FOR DAMAGES

## INTRODUCTION

RAFAEL L. RAMIREZ and YOLANDITA L. MALAVE bring this lawsuit on

behalf of themselves, their family and on behalf of the Estate of RAPHAEL

ESTEBAN RAMIREZ against the G6 HOSPITALITY LLC and/or MOTEL 6

OPERATING L.P as MOTEL 6, the CITY OF MARIETTA, Georgia, Officer

AMELIA HINES and Officer JARED FOSTER for the senseless and unjustified

shooting death of RAPHAEL ESTEBAN RAMIREZ in the parking lot of the

Motel 6 located at 2360 Delk Road, Marietta, Cobb County, Georgia on July 7,

2022.

## JURISDICTION

1. DEFENDANT G6 HOSPITALITY LLC and/or MOTEL 6 OPERATING L.P, doing business as MOTEL 6, (hereinafter **"DEFENDANT MOTEL 6"**), is a for-profit private foreign corporation and/or limited partnership authorized to transact business in Georgia, transacted business as MOTEL 6 at 2360 Delk Rd. Marietta, GA, 30067, USA and may be served with process through its registered agent, COGENCY GLOBAL INC. at 900 Old Roswell Lakes Parkway, Suite 310 Roswell, GA 30076 and/or Richard F. Evins at 1198 Buckhead Crossing, Suite B, Woodstock, GA, 30189.

2. At all times material to this action, DEFENDANT MOTEL 6 owned the premises known publicly and doing business as MOTEL 6 in Marietta, Cobb County, Georgia, where the incident giving rise to this action occurred.

3. At all times material to this action, DEFENDANT MOTEL 6 operated the premises known publicly and doing business as MOTEL 6, where the incident giving rise to this action occurred.

4.  DEFENDANT MOTEL 6 is subject to the jurisdiction and venue of this Court.

5.  DEFENDANTS AMELIA HINES and JARED FOSTER are being sued in their individual capacities only with respect to the Fourth Amendment claims, for which they are not entitled to qualified immunity because their actions violated clearly established law.

6.  Plaintiffs also assert state law claims of negligence, battery, and wrongful death against the City of Marietta itself to the extent of its liability insurance under O.C.G.A. §36-33-1 and the doctrines of respondeat superior and negligent hiring or retention. Because DEFENDANTS AMELIA HINES and JARED FOSTER have not been sued individually under state law, official immunity is not at issue.

7.  The claims against DEFENDANTS AMELIA HINES, JARED FOSTER, and the CITY OF MARIETTA, GA arise under 42 U.S.C. § 1983 and are based upon their violations of the Fourth and Fourteenth Amendments to the Constitution of the United States of America.

8. Plaintiffs' claims against DEFENDANTS AMELIA HINES, JARED FOSTER, and the CITY OF MARIETTA, GA also arise under Georgia law for violations of Georgia's Constitution Art. 1 Sec. 1 Par. XIII and Art. 1 Sec. 1, Par. XVII, breach of ministerial duties, assault and battery.

9. Plaintiffs' claims against DEFENDANT MOTEL 6 arise under Georgia law and are based upon their negligent security and liability for maintaining an unsafe premises.

10. Therefore, all of the parties herein are subject to the jurisdiction of this Court and this Court has jurisdiction over this matter under U.S.C. § 1343.

## **<u>VENUE</u>**

11. The event giving rise to Plaintiffs' claims occurred in Marietta, Cobb County Georgia, which is located within the district and divisional boundaries of the Atlanta Division of the Northern District of Georgia.

12. Furthermore, at least one of the Defendants reside within said district and division.

13. Therefore, pursuant to 28 U.S.C. §1391(b) and N.D.L.R. 3.1B(3), venue is proper in this Court.

## PARTIES

14. Plaintiffs RAFAEL L. RAMIREZ and YOLANDITA L. MALAVE are the biological parents of RAPHAEL ESTEBEN RAMIREZ, who died an untimely death at the age of twenty-six (26) on July 7, 2022.

15. RAPHAEL ESTEBAN RAMIREZ was unmarried and had no children, and his parents are authorized by Georgia law to bring this action for his wrongful death pursuant to O.C.G.A. §§51-1-1 and 19-7-1.

16. Plaintiffs also intend to petition the Probate Court of Cobb County to appoint RAFAEL L. RAMIREZ, father of RAPHAEL ESTEBAN RAMIREZ, to serve as personal representative and Administrator of the Estate of RAPHAEL ESTEBAN RAMIREZ, at which time this Complaint can and will be amended to add the Administrator and a claim on behalf of the Estate for pain and suffering, funeral or other necessary expenses, and punitive damages.

17. DEFENDANT MOTEL 6 owned the premises known publicly and doing business as MOTEL 6 in Marietta, Cobb County, Georgia.

18. DEFENDANT CITY OF MARIETTA is a duly incorporated municipality in Cobb County, organized and established by operation of the laws of the state of Georgia. and is subject to the jurisdiction of this Court.

19. DEFENDANT CITY OF MARIETTA may be served with process and/or with waiver of service by First Class Mail sent to: Marietta City Manager, 205 Lawrence Street, Marietta, GA 30060.

20. DEFENDANT AMELIA HINES (hereinafter "HINES") is an individual who, at all times pertinent to the events, giving rise to this lawsuit, was a City of Marietta Police Officer, and was acting under color of law and within the scope of her employment.

21. DEFENDANT JARED FOSTER (hereinafter "FOSTER") is an individual who, at all times pertinent to the events giving rise to this lawsuit, was a City of Marietta Police Officer and was acting under color of law and within the scope of his employment.

22. DEFENDANTS HINES and FOSTER are each sued in their individual capacity and may be served with process and/or with waiver of service by First Class Mail sent to: Marietta Police Department 240 Lemon St NE, Marietta, GA 30060.

# **FACTUAL ALLEGATIONS**

# **RAPHAEL RAMIREZ'S DEATH AT THE MOTEL 6 AT 2360 DELK RD. MARIETTA, GEORGIA ON JULY 7, 2022**

23. At all times relevant to this action, on July 7, 2022, Raphael Ramirez was an invitee of Motel 6, located at 2360 Delk Road, Marietta, Cobb County, Georgia, having rented a room at the Motel 6 on July 7, 2022.

24. In the early evening of July 7, 2022, Raphael Ramirez was sitting in the driver's seat of his red Honda Accord Sport, VIN #1HGCV1F30MA054616, which was parked legally in a parking spot in the parking lot said Motel 6.

25. The only other individual in his vehicle was his friend, Annette Diaz, who was seated in the front passenger seat.

26. Raphael Ramirez's vehicle had been lawfully rented and paid for by his mother, YOLANDITA MALAVE, a day prior.

27. On July 7, 2022, FOSTER parked his patrol car in the middle of the Motel 6 parking lot, not in any particular spot, several feet from where Raphael Ramirez's vehicle was legally parked, obstructing ingress and egress.

28. On or about the same date and time, HINES parked her patrol car similar to FOSTER, illegally in the middle of the parking lot, obstructing ingress and

egress, and <u>directly behind</u> Raphael Ramirez's vehicle, which effectively

blocked it in, detaining his vehicle without articulable suspicion of any crime.

29. On or about the same date and time FOSTER or HINES were not called to the

Motel 6 on July 7, 2022 to investigate or respond to any reported crime or

ongoing criminal behavior there.

30. FOSTER and HINES later claimed they were on the premises of the Motel 6 on

the evening of July 7, 2022 because it was a "high crime" area and Motel 6 had

authorized Marietta Police Department to be on their premises pursuant a

"criminal trespass program" whereby Motel 6 bypassed hiring private security

to patrol their premises and keep it safe and instead, invited Marietta Police

officers to come onto their Motel 6 property and engage in investigations that

lacked scope or limitations.

31. At the time both HINES and FOSTER detained Raphael Ramirez's vehicle and

approached his vehicle, neither officer had identified Raphael Ramirez as the

driver of the red Honda Accord Sport nor did they have any reason to suspect

him or his passenger, Annette Diaz, of any criminal activity.

32. As an invitee of Motel 6 on July 7, 2022, Raphael Ramirez was owed the right

to reasonable security initiatives that safeguard him, and legally permitted

visitors like him, from foreseeable and avoidable crimes, including

unreasonable police harassment, investigation and gun violence.

33. It is unclear whether either HINES or FOSTER ran the vehicle's tags prior to blocking in the vehicle and detaining Raphael Ramirez and Annette Diaz but had they done so, they would have quickly learned the vehicle was not stolen nor was it the subject of any pending criminal investigation (that would justify said Defendants detaining it).

34. HINES and FOSTER had not received any complaints or requests for their services at Motel 6 on July 7, 2022 but clearly believed they were authorized to illegally park their patrol cars in the parking lot and harass invitees on the property to determine whether they were engaging in criminal trespass or otherwise violating any other law that would retroactively justify detaining the vehicle and its occupants,

35. When HINES blocked Raphael Ramirez's vehicle in its parking space and both HINES and FOSTER approached his vehicle, HINES on the driver's side and FOSTER on the passenger's side, and demanded he provide them with identification and exit the vehicle immediately, Raphael Ramirez was being unlawfully detained—and there was no articulable suspicion of criminal activity to justify the detention.

36. A reasonable person in Raphael Ramirez's position would not have felt free to leave when two law enforcement officers approached his vehicle, one on each

side, and effectively blocked his vehicle in its space while demanding identification and commanding him to step out of the vehicle.

37. Only after HINES blocked the vehicle in its parking space and both HINES and FOSTER approached Raphael Ramirez's parked vehicle and demanded he exit it, effectively arresting him without a lawful basis, did they claim to have seen Raphael Ramirez rolling up suspected marijuana into a cigarillo in his lap.

38. Within moments of HINES and FOSTER unlawfully detaining Raphael Ramirez, Raphael Ramirez put his vehicle in reverse and attempted to flee the unlawful detention.

39. While traveling at a very slow rate of speed, in reverse, Raphael Ramirez tried to avoid hitting HINES's illegally parked patrol car, blocking him in, and made slight contact with a Motel 6 patron's parked vehicle directly to his left.

40. Then, Raphael Ramirez, still operating his vehicle at a very slow rate of speed, reversed a bit farther, still trying get out of the parking spot, and made slight contact with HINES's vehicle.

41. At that exact moment, HINES, who was standing near but not in front of the driver's side door of Raphael Ramirez's vehicle and in no way scared of being hit by the vehicle herself, is seen dash cam video pulling out her weapon, not moving out of the way of the vehicle—but instead wedging herself between her

own patrol car and the driver's side of his vehicle to get the best angle to shoot through the driver's side window and kill Raphael Ramirez.

42. Instead of moving out of the way of the slowly moving vehicle, which was traveling at a speed under 5 mph, and before Raphael Ramirez's vehicle made any contact with HINES, HINES can be seen on FOSTER's dash cam video standing in front of Raphael Ramirez's vehicle, pulling out her city-issued firearm and firing it several times into the driver's window of the vehicle prior to the vehicle making any contact with her.

43. HINES fired three shots into Raphael Ramirez's head and neck, while his vehicle was slowly attempting to flee the parking lot and clearly was not intending to strike her.

44. There was no evidence whatsoever that Raphael Ramirez was in possession of a weapon or that he intended to use his vehicle in any offensive, dangerous manner with the intent to hurt or injure anyone.

45. It was clear from HINES's reaction to the situation that she was not in remote fear for her own life or the life of anyone else when she chose to remain extremely close to the fleeing vehicle and open fire at it—instead of moving out of the way or doing anything else other than shooting into it and causing the death of Raphael Ramirez.

46. At most, the vehicle driven by Raphael was operating at a pace of 5 mph and was not being driven recklessly or in an aggressive manner towards HINES, FOSTER or anyone on Motel 6's premises.

47. After HINES shot Raphael Ramirez in the head several times and the vehicle passed her by, she fell to the ground as though she had been run over by Raphael Ramirez's vehicle—seemingly, for maximum drama effect and the benefit of optics.

48. At that same time, HINES's fellow officer, FOSTER, who was several feet behind and to the right of Raphael Ramirez's vehicle, and was in <u>absolutely no danger</u> of being struck by the vehicle and would have no reason to believe HINES was in danger of being struck by the vehicle, joined HINES in her senseless, depraved use of deadly force and similarly began shooting at and into the slowly moving vehicle.

49. HINES later told GBI investigators that she did not have time to turn on her body-worn camera because she had just come on duty—so, apparently, no bodycam exists from her vantage point.

50. By contrast, FOSTER supposedly had turned on his body-worn camera prior to approaching Raphael Ramirez's parked vehicle so the footage exists but has not yet been made available to counsel for Plaintiffs.

51. Motel 6 claimed that their surveillance cameras were not operational on July 7, 2022 so there is no surveillance footage from Motel 6 that captured the police-involved shooting of Raphael Ramirez.

52. Several witnesses at the Motel 6 on the evening of July 7, 2022 described seeing Raphael Ramirez sitting in his parked red Honda Accord Sport with a woman in the passenger seat at the time police officers approached both sides of his car.

53. Several witnesses at the Motel 6 on the evening of July 7, 2022 described that Raphael Ramirez tried to back out of the parking spot and flee the police interaction but before he made it out of the spot or made any contact with HINES, both officers pulled their firearms and began shooting into the vehicle indiscriminately.

54. At least one witness told GBI investigators that FOSTER was laughing after the shooting.

55. Other witnesses to the killing of Raphael Ramirez, who had filmed portions of the police-involved shooting and aftermath and attempted to provide the same to police and news networks, were instructed by Motel 6 employees to not speak to any news outlet or provide any such footage they filmed or else they would be put on to Motel 6's "DNR" (Do Not Rent) list.

## RELEVANT MARIETTA POLICE DEPARTMENT TRAINING, POLICIES, AND PROCEDURES

56. The policies of the City of Marietta Police Department required that Raphael Ramirez be informed what he was being charged and why he was under arrest at the time he was no longer free to leave, which was when HINES parked her patrol car behind his vehicle, blocking him in, detaining him without reasonable suspicion of criminal activity, approached his car window, demanded he step out of the vehicle, and then opened fire on him for not complying with her commands.

57. Pursuant to City of Marietta Police Department's Standard Operating Procedure regarding Deadly & Non-Deadly Force (S.O.P. A020), which was in effect at the time of Raphael Ramirez's death,

"It is the policy of the Marietta Police Department to value and preserve human life. Officers will use only the force that is objectively reasonable to effectively bring an incident under control, while protecting the safety of the officers and others. Officers will use force only when no reasonably effective alternative appears to exist and will use only use the level of force

which a reasonably prudent officer would use under the same or similar circumstances.

The decision to use force 'requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer and whether he is actively resisting arrest or attempting to evade arrest by flight.'

In addition, the 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight…the question is whether the officers actions are 'objectively reasonable' in light of the facts and circumstances confronting them.

See Marietta Police Department, Standard Operating Procedure A020, Part II.

58. Furthermore, pursuant to City of Marietta Police Department's Standard Operating Procedure regarding Deadly & Non-Deadly Force (S.O.P. A020), which was in effect at the time of Raphael Ramirez's death,

"An officer is authorized in the use of deadly force when it is objectively reasonable under the totality of the circumstances. Use of deadly force is justified when one or both of the following apply:

a. To protect the officer or others from what is reasonably believed to be an immediate threat of death or serious bodily injury

b. To prevent the escape of a fleeing subject when the officer has probable cause to believe that the person has committed or intends to commit a felony involving serious bodily injury or death, and the officer reasonably believes that there is an imminent risk of serious bodily harm or death to the officer or another if the subject is not immediately apprehended.

When feasible, the officer will identify himself or herself as a law enforcement officer and warn of his or her intention to use deadly force."

See Marietta Police Department, Standard Operating Procedure A020, Part

IV, Section D, Subsection 1 and 2.

59. Furthermore, pursuant to City of Marietta Police Department's Standard

Operating Procedure regarding Deadly & Non-Deadly Force (S.O.P. A020),

which was in effect at the time of Raphael Ramirez's death, the following are,

in relevant part, the Deadly Force Restrictions:

   a. Deadly force should not be used against persons whose actions are a

      threat only to themselves or property.

   b. Warning shots are inherently dangerous. Therefore, warning shots are

      prohibited.

   c. Firearms will not be discharged at a moving vehicle unless:

      1. A person in the vehicle is threatening the officer or another

         person with deadly force by means other than a vehicle; or,

      2. The vehicle is operated in a manner deliberately intended to

         strike an officer or another person, and all other reasonable

         means of defense have been exhausted (or are not present or

         practical), which includes moving out of the path of the vehicle.

See Marietta Police Department, Standard Operating Procedure A020, Part

IV, Section D, Subsection 3.

60. Pursuant to City of Marietta Police Department's Standard Operating Procedure

regarding Firearms Regulations & Qualifications (S.O.P. T040), which was in

effect at the time of Raphael Ramirez's death,

Targets will not be scored unless basic proficiency is demonstrated by

meeting the requirements outlined in the course of fire. Failure to

demonstrate proficiency voids the mathematical score of the target and result

in a "Fail" for the entire course of the fire.

Basic proficiency includes but is not limited to:

a.  Proper and safe weapon handling

b.  Firing on the correct target

c.  Accountability for shots fired

d.  Following range instructions

e.  Understanding and demonstrating competency in marksmanship

f.  Use of force decision-making.

A minimum passing score is 80%.

See Marietta Police Department, Standard Operating Procedure T040, Part IX, Section G.

61. Training/personnel records for both HINES and FOSTER demonstrate that they each underwent eight (8) hours of firearms training in 2022, prior to their killing of Raphael Ramirez, however it is clear that the subject of "use of force decision making" was overlooked and as a training topic and/or improperly taught.

62. In essence, City of Marietta Police Department had a custom/policy, failed to adequately train its law enforcement officers on use of force decision-making and seemed solely concerned with marksmanship scores before allowing their officers to patrol the City of Marietta armed with deadly weapons.

63. HINES's conduct showed willful misconduct, malice, fraud, wantonness, oppression or an entire want of care which would cause the presumption of conscious indifference to consequences. In essence, HINES acted with intent to injure Raphael Ramirez without reasonable justification.

64. Based on the intentional and malicious nature of HINES's conduct, he is not entitled to official immunity from the state law based claims presented herein and is further liable to the Estate of Raphael Ramirez for punitive damages.

65. FOSTER's conduct showed willful misconduct, malice, fraud, wantonness, oppression or an entire want of care which would cause the presumption of conscious indifference to consequences. In essence, FOSTER acted with intent to injure Raphael Ramirez without reasonable justification.

66. Based on the intentional and malicious nature of FOSTER's conduct, he is not entitled to official immunity from the state law based claims presented herein and is further liable to the Estate of Raphael Ramirez for punitive damages.

## CAUSES OF ACTION

## COUNT I

### *Premises Liability under O.C.G.A. § 51-3-1*

### *Against Defendant Motel 6*

67. Because Motel 6 authorized Marietta Police officers via their "Criminal Trespass Program" to, without limitation or procedure or insurance of the protection of invitees/patrons of Motel 6, engage in police investigations and unlawful detentions on their private property, including harassing and detaining individuals who were lawfully permitted to be there, Motel 6 failed to protect their invitees/patrons from reasonably foreseeable, violent, criminal actions by law enforcement, in violation of their constitutional rights to be free from unreasonable searches and seizures, as well as their quiet enjoyment of property.

68. Motel 6 failed to exercise ordinary care in keeping the premises and approaches safe by failing to hire trained private security officers and instead, permitting limitless police investigations on their private property, without informing patrons/invitees that they would be giving up their constitutional rights under the U.S. and Georgia Constitution by being guests at the Motel 6.

69. Given the number of police-involved incidents leading to patrons being unlawfully harassed, detained, and injured by law enforcement officers at the Motel 6 on Delk Rd. as well as the foreseeable consequences of the "Criminal Trespass Program", Motel 6 had a duty to implement safeguards for legally

permitted invitees/patrons/visitors to prevent avoidable crimes and foreseeable injuries to them.

70. Additionally, Motel 6 had a duty to maintain operational surveillance cameras on their property, especially in light of their negligent choice to continue permitting Marietta Police officers to, without limitation or consequence, come onto their private Motel 6 property pursuant to their "Criminal Trespass Program" and engage in unconstitutional detentions and searches of patrons/invitees.


## Count II

### *Excessive Force under 42 U.S.C. § 1983 and Battery under O.C.G.A. § 51-1-13 Against Defendants HINES and FOSTER*


71. When HINES shot and killed Raphael Ramirez, Raphael Ramirez did not pose an immediate threat of serious physical harm or death to other persons, and as a result, HINES's use of deadly force was unjustified and constituted a violation of the Fourth Amendment of the United States Constitution.

72. Similarly, when FOSTER shot at Raphael Ramirez's vehicle and struck Raphael Ramirez, Raphael Ramirez did not pose an immediate threat of serious physical harm or death to other persons, and as a result, FOSTER's use of

deadly force was unjustified and constituted a violation of the Fourth

Amendment of the United States Constitution

73. Based on the totality of the facts and circumstances herein, no reasonable

officer could have believed that Raphael Ramirez posed any immediate threat

of serious physical harm or death to any person while he was slowly reversed

his vehicle and then, putting it in drive and attempting to drive away.

74. Every reasonable officer would have known that the force used by HINES was

unreasonably disproportionate and excessive and would violate Raphael

Ramirez's Fourth Amendment rights.

75. Every reasonable officer would have known that the force used by FOSTER

was unreasonably disproportionate and excessive and would violate Raphael

Ramirez's Fourth Amendment rights.

76. HINES violated clearly established law and is not entitled to qualified immunity

for his use of deadly force in shooting Raphael Ramirez.

77. FOSTER violated clearly established law and is not entitled to qualified

immunity for his use of deadly force in shooting Raphael Ramirez.

78. By virtue of the facts described herein, the actions of HINES and FOSTER

constitute assault and battery under Georgia law, a violation of Article I,

Paragraph XIII of the Constitution of the State of Georgia; and abuse in being

arrested in violation of Article I, Paragraph XVII of the Constitution of the State of Georgia.

79. HINES and FOSTER acted with actual malice and an intent to injure Raphael Ramirez by using deadly and excessive force such that he is not entitled to official immunity under state law.

80. As a result of HINES's and FOSTER's unlawful conduct, Raphael Ramirez sustained injuries and pain in advance of his death, and sustained fatal injuries which caused Raphael Ramirez's senseless, cruel death.

## COUNT III

### *Municipal "Monell" liability under 42 U.S.C. §1983*

### *against Defendant City of Marietta -*

81. "A city may be held liable under § 1983 for inadequate police training 'where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact" Favors v. City of Atlanta, 849 F. App'x 813, 817 (11th Cir. 2021) (quoting City of Canton v. Harris, 489 U.S. 378, 388 (1989)).

82. Because the Fourth Amendment of the United States Constitution prohibits the use of deadly force to seize a fleeing suspect if that suspect does not – at the

time of the use of such deadly force – constitute an immediate threat of physical harm to other persons, Raphael Ramirez's Fourth Amendment rights under the United States Constitution were violated here, on July 7, 2022.

83. Here, the City of Marietta had a custom or policy that constituted deliberate indifference to the constitutional rights of Raphael Ramirez in that they customarily failed to train Marietta Police officers in the use of deadly force decision-making, especially in the area of using deadly force against fleeing vehicles.

84. The City's failure to train its officers in deadly force decision-making and the use of deadly force against fleeing vehicles were the driving force behind the decisions of HINES and FOSTER to (mis)use deadly force against Raphael Ramirez, believing it was authorized, and the driving force behind the violation of his constitutional rights.

85. There have been repeated instances of Marietta Police Officers shooting at and into vehicles such that the City of Marietta knew its officers needed additional, specific training in the particular area of using deadly force against fleeing vehicles.

86. The fact that Marietta Police officers received training on excessive force, generally, and Marietta Police Department had policies on the usage of deadly force is insufficient to establish that the City of Marietta sufficiently trained

officers in the particular area of using deadly force in response to persons fleeing in <u>vehicles.</u>

87. Here, the City of Marietta's custom or practice of failing to train in the particular area of deadly force decision making and using deadly force against fleeing vehicles caused the violations of Raphael Ramirez's constitutional rights and also caused him to lose his precious life.

88. The City of Marietta's insufficient oversight of "use of deadly force" incidents, unconstitutional policies, and <u>inadequate training</u> created an overwhelming risk that its officers would use deadly force in manners that violates the constitutional rights of citizens like and including Raphael Ramirez.

89. The Chief of Police is the final policy maker for all matters related to the training and discipline for officers employed by the City of Marietta.

90. When he took office as the Chief of Police, the Chief of Police had knowledge of the City's widespread pattern and practice of Marietta Police officers improperly using department-issued firearms and excessive deadly force in circumstances which do not authorize the use of deadly force and knowledge of the substantial risk that officers would violate the Constitution if this custom was allowed to continue uncorrected; the Chief nevertheless took no remedial action during his tenure as Chief and allowed the unconstitutional custom to continue.

91. Neither HINES nor FOSTER were disciplined for their blatant misuse of deadly force on July 7, 2022, causing the senseless, untimely death of Raphael Ramirez.

## **COUNT IV**

### _State Law Battery Claim O.C.G.A. § 51-1-13_

### _Against Defendant City of Marietta_

66. By using deadly force against Raphael Esteban Ramirez under circumstances where it was not necessary for the defense of self or others under O.C.G.A. §16-3-21, Defendant City of Marietta committed an actionable battery under Georgia law.

67. Said battery was committed by Defendants HINES and FOSTER, who were both employed by Defendant City of Marietta, and acted within the scope of their employment, and therefore the City is liable to Plaintiffs under the doctrine of respondeat superior for all damages proximately caused by the battery to the extent that the City of Marietta has waived its sovereign immunity to the extent of its liability insurance under O.C.G.A. §36-33-1.

68. Prior to filing this claim for damages against the City of Marietta, Plaintiffs served timely ante litem notice upon the City as required by O.C.G.A. §36-33-5.

## COUNT V

### *State Law Negligence Claim Under O.C.G.A. §16-3-21*

### *Against Defendant City of Marietta*

69. The unreasonable decision by Defendant City of Marietta police officers to use deadly force against Raphael Ramirez was a breach of the standard of care applicable to the law enforcement profession as well as to the public at large under O.C.G.A. §16-3-21, and such failure to comply with the standard of care constituted negligence under Georgia law.

70. In addition to the unreasonableness of their decision to use deadly force, the employees of Defendant City of Marietta were negligent in their use of police tactics in general, because no reasonable officer under similar circumstances would have handled the situation in the way that they did.

71. Said negligence on said police officers occurred within the scope of their employment by Defendant City of Marietta, and therefore the City is liable to Plaintiffs under the doctrine of respondeat superior for all damages proximately

caused by his negligence to the extent that the City of Marietta has waived its sovereign immunity to the extent of its liability insurance under O.C.G.A. §36-33-1.

72. Prior to filing this claim for damages against the City of Marietta, Plaintiffs served timely ante litem notice upon the City as required by O.C.G.A. §36-33-5.

## **DAMAGES**

73. As a direct and proximate result of the above-described conduct of Defendants, Raphael Ramirez was deprived of his legal rights as well as his life, and Defendants are liable for all damages proximately flowing from said deprivation of rights, including but not limited to the full value of decedent's life, both economic and noneconomic.

74. Once the estate has been opened by the Probate Court and an administrator has been appointed and added by amendment hereto, Defendants will also be liable to the Estate of Raphael Ramirez for his conscious pain and suffering, including mental anguish and emotional distress, and his final medical and funeral expenses, all of which were proximately caused by Defendants unlawful and tortious conduct, as well as for punitive damages against the individual Defendants for their willful and wanton acts.

75. Defendants are liable to Plaintiffs for all of the foregoing injuries and damages in an amount to be proven at trial and determined by the enlightened conscience of fair and impartial jurors.

## **PRAYERS FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request:

a. That the Estate of Raphael Ramirez be awarded damages from the Defendants for the pain and suffering of Raphael Ramirez prior to his death and be awarded all damages, including special, nominal, punitive, and compensatory damages permitted by operation of federal and Georgia law. The Estate does not seek punitive damages against the City of Marietta;

b. That RAPHAEL RAMIREZ and YOLANDITA MALAVE be awarded judgments against Defendants MOTEL 6, HINES, FOSTER and the City of Marietta for all damages permitted by law for the wrongful death of Mr. Raphael Esteban Ramirez including compensatory damages as measured by the full value of Mr. Ramirez's life and punitive damages against MOTEL 6, HINES and FOSTER. Plaintiffs does not seek punitive damages against the City of Marietta;

c. That both Plaintiffs recover attorney's fees pursuant to 42 U.S.C. § 1988;

d. That a trial by jury be had upon all issues so triable; and,

e. That the Plaintiffs be awarded such other and further relief to which they are

legally entitled.

Respectfully submitted,

This the 6TH day of July, 2024.

/s/Rachel Kaufman
Rachel M. Kaufman
Attorney for Defendant
Georgia Bar No. 491375

Kaufman Law Firm LLC
**133 Nassau Street NW**
**Atlanta, GA, 30303-2035**
T: 404.615.7588
F: 404.759.2339
rachel@rachelkaufmanlaw.com