IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

RAFAEL L. RAMIREZ, *et al.*,

    Plaintiffs,

     v.

THE CITY OF MARIETTA, GEORGIA,
*et al.*,

    Defendants.

CIVIL ACTION NO.
1:24-cv-02996-TRJ

## ORDER

On July 9, 2025, Defendants Amelia Hines and Jared Foster filed a motion for summary judgment. (Doc. 48). Upon review and consideration, and with the benefit of oral argument, Defendants' motion for summary judgment is **GRANTED**.

## BACKGROUND

On July 7, 2022, Defendants Amelia Hines and Jared Foster—both police officers for the Marietta Police Department ("MPD")—were patrolling a Motel 6 property located in Marietta, Georgia. (Doc. 43-1 at 6–7; Doc. 44-1 at 6). Because the Motel 6 is a "high crime area," officers proactively patrol the property during their shifts. (Doc. 43-1 at 10; Doc. 44-1 at 7). Proactive patrols often involve "consensual encounters," during which officers approach individuals on the property to ensure they are not participating in criminal activity. (Doc. 43-1 at 12; Doc. 44-1 at 17).

At around 6:00 p.m., during their proactive patrol, Officer Hines and Officer Foster saw Raphael Ramirez and a passenger parked in a red Honda outside of the Motel 6. (Doc. 43-1 at 19–20; Doc. 44-1 at 7–8). Officer Foster parked his patrol car

roughly two parking spaces away from Ramirez's red Honda, exited his car, and approached the Honda on the passenger side to initiate a consensual encounter. (Doc. 43-1 at 26–27; Body Cam[1] at 00:01–18). Meanwhile, Officer Hines parked her car nearby and approached the Honda from the driver's side. (Doc. 43-1 at 28; Dash Cam at 00:01–02). Her car was located one space up from the red Honda, behind a silver car parked next to the red Honda. (Doc. 43-1 at 28). Officer Foster's dash cam captured the position of the cars:



(Dash Cam at 00:01).

---

[1] On February 18, 2026, the Court held a hearing on Defendants' motion for summary judgment. (Doc. 66). At the hearing, the parties submitted an electronic version of video exhibits that was entered into evidence as Court's Exhibit 1. (*Id.*) One video depicts Officer Foster's car dash camera during the incident (the "Dash Cam"), and a second video depicts Officer Foster's body camera footage (the "Body Cam"). (*Id.*) Though the parties filed excerpts of these videos with their summary judgment submissions, the Court relies on Court's Exhibit 1 here.

Officer Foster approached the passenger side window of the red Honda and knocked on it. (Body Cam at 00:15–19). Officer Foster testified that he observed marijuana in the center console. (Doc. 43-1 at 28–29). Ramirez then shifted the Honda into reverse and began turning the wheel to the right to back out of the space. (Body Cam at 00:20–23). Officer Foster instructed him to stop the car, and Ramirez stopped and rolled down the passenger side window. (*Id.* at 00:23–27). Officer Foster told Ramirez and his passenger to "step out," but Ramirez again shifted the car into reverse and began to back out of the parking spot. (*Id.* at 00:30–32). Officer Hines, who was between the driver's side of the Honda and the car next to it, shuffled to her right—alongside the driver's side of the Honda and back towards her car—as Ramirez accelerated in reverse out of the parking spot. (Dash Cam at 00:03–06). After reversing out of the parking spot, Ramirez paused as Officer Hines stood near the front driver's side of his Honda with her back to her car. (*Id.* at 00:05–06). As he paused, Officer Hines testified that she and Ramirez "lock[ed] eyes," and she noticed the red Honda was pointed towards her. (*Id.*; Doc. 44-1 at 19). Ramirez then shifted into drive and began to accelerate forward, between Officer Hines' car and the silver car. (Dash Cam at 00:06–007). As Ramirez did so, Officer Hines moved toward her car as she became pinned between the moving red Honda and her car:



(*Id.* at 00:06–07). Believing that Ramirez was using the red Honda as a deadly weapon, Officer Hines shot into the driver's side window. (*Id.* at 00:08; Doc. 44-1 at 19, 22, 27–28). Ramirez struck Officer Hines' foot with the red Honda while he accelerated forward. (Dash Cam at 00:06–07; Doc. 44-1 at 27; Body Cam at 00:35). Officer Hines screamed and fell to the ground. (Dash Cam at 00:08–09; Body Cam at 00:35–39). As the red Honda continued traveling forward, Officer Foster fired his gun toward it approximately four times. (Doc. 43-1 at 51–53; Body Cam at 00:37–39). The entire encounter—from the first verbal contact with Ramirez to the last shots fired— lasted less than twenty seconds. (Body Cam at 00:16–35).

After Officer Foster's shots, the red Honda stopped for approximately six seconds, then began slowly moving forward again with the brake lights on. (Dash Cam at 00:10–17). Believing Ramirez was fleeing the scene, the Officers entered their cars and followed him for approximately eight seconds before the red Honda came to a stop across the parking lot. (Doc. 43-1 at 55; Doc. 44-1 at 23; Body Cam at 00:55–

1:04). Officer Foster approached the red Honda and found Ramirez unresponsive in the driver's seat with a gunshot wound to his face. (Body Cam at 2:26–28; Doc. 43-1 at 60; Doc. 44-1 at 22). Ramirez later died from the injury. (Doc. 43-1 at 82).

On July 6, 2024, Ramirez's parents, Plaintiffs Rafael Ramirez and Yolandita Malave, sued Officer Hines and Officer Foster, asserting a claim for excessive force under 42 U.S.C. § 1983 and a claim for battery under O.C.G.A. § 51-1-13, and seeking special, nominal, punitive, and compensatory damages. (Doc. 1 at 22–24, 29). On July 9, 2025, Officer Hines and Officer Foster moved for summary judgment asserting official immunity and qualified immunity. (Doc. 48). On February 18, 2026, the Court heard oral arguments from the parties.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is "genuine" if the evidence would allow a reasonable jury to find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it is "a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).

The moving party bears the initial burden of showing the Court, by reference to materials in the record, that there is no genuine dispute as to any material fact that should be decided at trial. *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256,

1260 (11th Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The moving party's burden is discharged merely by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support [an essential element of] the nonmoving party's case." *Celotex Corp.,* 477 U.S. at 325. In determining whether the moving party has met this burden, the Court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion. *Johnson v. Clifton*, 74 F.3d 1087, 1090 (11th Cir. 1996).

Once the moving party has adequately supported its motion, the non-movant has the burden of showing that summary judgment is improper by coming forward with specific facts showing a genuine dispute. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). All reasonable doubts are resolved in favor of the non-movant. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).

DISCUSSION

A.  Battery Claim

Both in their response brief and on the record at the February 18, 2026 hearing, Plaintiffs expressly abandoned their battery claim under O.C.G.A. § 51-1-13. (Doc. 58 at 2 ("Plaintiff does not oppose the dismissal of [the battery claim].")). "[A]bandonment of [a] claim . . . warrants the entry of summary judgment for the opposing party." *Burnette v. Northside Hosp.*, 342 F. Supp. 2d 1128, 1140 (N.D. Ga. 2004). Therefore, the Officers' motion for summary judgment as to the battery claim is **GRANTED**.

### B. Qualified Immunity

Officer Hines and Officer Foster each move for summary judgment as to Plaintiffs' excessive force claim on the basis that it is barred by qualified immunity. (Doc. 48-1 at 8). After thorough review of the record, the Court agrees.

"When defending against a § 1983 claim . . . a government official may assert the defense of qualified immunity." *Alston v. City of Darien*, 750 F. App'x 825, 831 (11th Cir. 2018) (citation modified). "Qualified immunity offers complete protection for government officials sued in their individual capacities as long as their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known." *McCullough v. Antolini*, 559 F.3d 1201, 1205 (11th Cir. 2009) (citation modified). The defense of "qualified immunity allows officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." *Maughon v. City of Covington*, 505 F. App'x 818, 820 (11th Cir. 2013) (citation modified); *McCullough*, 559 F.3d at 1205 ("The purpose of qualified immunity is to allow officials to carry out discretionary duties without the chilling fear of personal liability.").

To receive qualified immunity, an officer must first establish "that he or she acted within the scope of discretionary authority when the allegedly wrongful acts occurred." *Hardigree v. Lofton*, 992 F.3d 1216, 1223 (11th Cir. 2021) (citation omitted). If an officer was acting within the scope of his or her discretionary authority, "the burden then shifts to the plaintiff to show that . . . qualified immunity is

inappropriate." *McCullough*, 559 F.3d at 1205. To do so, the plaintiff must demonstrate that: (1) the facts, viewed in the light most favorable to the plaintiff, establish that the officer violated a constitutional right, and (2) that constitutional right was clearly established at that time. *Id.*; *Maughon*, 505 F. App'x at 821. Notably, courts "need not conduct this qualified immunity analysis in any specific order; rather, [courts] are permitted to exercise [their] sound discretion in deciding which prong of this inquiry to address first." *Maughon*, 505 F. App'x at 821.

Plaintiffs do not dispute that Officer Hines and Officer Foster were acting within the scope of their discretionary authority. (*See* Docs. 1, 58). The burden, therefore, shifts to Plaintiffs to establish that qualified immunity is inappropriate by showing that, when viewed in the light most favorable to them, the facts demonstrate that (1) the Officers violated Ramirez's constitutional right, and (2) that right was clearly established at the time. *See Hinson v. Bias*, 927 F.3d 1103, 1116 (11th Cir. 2019) (citation modified).

The Fourth Amendment protects against "unreasonable . . . seizures." U.S. CONST. amend. IV; *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (explaining that the constitutional protection against unreasonable seizures "encompasses the plain right to be free from excessive force"). And "apprehension by use of deadly force is a seizure." *Tennessee v. Garner*, 471 U.S. 1, 7 (1985). Therefore, the relevant inquiry is whether the Officers' use of deadly force against Ramirez was reasonable. *Hinson*, 927 F.3d at 1116–17. The Fourth Amendment's "objective reasonableness" standard governs this analysis. *Id.* at 1117; *Shaw v. City of Selma*, 884 F.3d 1093,

1099 (11th Cir. 2018).

Under the Fourth Amendment's objective reasonableness standard, courts "must consider whether the officer's conduct is objectively reasonable in light of the facts confronting the officer." *Hinson*, 927 F.3d at 1117 (citation modified). In doing so, courts must "balance the risk of bodily harm to the suspect against the gravity of the threat the officer sought to eliminate." *McCullough*, 559 F.3d at 1206. "[I]t is doctrinal gospel that [courts] do not view an officer's actions with the 20/20 vision of hindsight, and that [courts] make special allowance for them in tense, uncertain, and rapidly evolving situations." *Shaw*, 884 F.3d at 1100 (citation modified).

The Eleventh Circuit instructs that deadly force is "reasonable" for purposes of the Fourth Amendment when an officer:

> (1) has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others or that he has committed a crime involving the infliction or threatened infliction of serious physical harm; (2) reasonably believes that the use of deadly force was necessary to prevent escape; *and* (3) has given some warning about the possible use of deadly force, if feasible.

*Vaughan v. Cox*, 343 F.3d 1323, 1329–30 (11th Cir. 2003) (citation modified) (quoting *Garner*, 471 U.S. at 11–12). These factors, however, "d[o] not establish a magical on/off switch that triggers rigid preconditions whenever an officer's actions constitute deadly force." *Scott v. Harris*, 550 U.S. 372, 380 (2007). "The constitutional test for excessive force is necessarily fact specific." *McCullough*, 559 F.3d at 1206.

In their motion, the Officers argue that the use of deadly force was reasonable, because: (1) Officer Hines believed Ramirez posed a serious threat of physical harm

to her by driving the red Honda toward her, and (2) Officer Foster believed Ramirez inflicted serious physical harm on Officer Hines when she was pinned between the cars, fired her gun, screamed, and fell to the ground. (Doc. 48-1 at 12–13, 17–18). Each of these arguments are consistent with applicable law.

Under Georgia law, "a car driven in a threatening manner can be considered a deadly weapon." *Robinson v. Arrugueta*, 415 F.3d 1252, 1255 (11th Cir. 2005) (citing *Webb v. State*, 256 Ga. App. 653, 654 (2002) ("[O]ne who aims a motor vehicle at another person may be convicted of aggravated assault regardless of whether the victim sustained any injuries or was even touched by the vehicle.")). Georgia law also provides that an officer may "use deadly force to prevent death or great injury to himself/herself." *Id.* at 1256.

Here, Officer Hines used deadly force to prevent what she perceived as a threat of grave physical injury or death from Ramirez using the red Honda as a deadly weapon. (Doc. 44-1 at 22 ("[Ramirez was] using a deadly weapon, which [was] the vehicle, towards me.")). Officer Hines was attempting to avoid Ramirez's vehicle as he quickly pulled out of his parking spot and turned the front of his vehicle toward her. (Dash Cam at 00:03–07). As she backed toward her own patrol car, she was standing in a narrow space between two vehicles, Ramirez was disobeying Officer Foster's orders to stop the car, and Officer Hines had to make a split-second decision as to whether she could move out of the red Honda's path before she was crushed. (Dash Cam at 00:03–09; Body Cam at 00:16–39; Doc. 44-1 at 19–21).

Likewise, Officer Foster believed Ramirez crushed Officer Hines with the red

Honda and, after repeated orders to stop and exit the car, fired his weapon at
Ramirez. (Doc. 43-1 at 48; Body Cam at 00:24–38; Dash Cam at 00:05–09). Indeed,
Officer Foster testified that, after hearing Officer Hines scream and fire her weapon,
he believed the red Honda had crushed her. (Doc. 43-1 at 48). Officer Foster,
therefore, had probable cause to believe that Ramirez posed a threat of serious
physical harm to Officer Hines, and that he had committed a crime involving the
infliction or threatened infliction of serious physical harm. *Vaughan*, 343 F.3d at
1329–30. And this Circuit provides that where an officer has probable cause to believe
these circumstances existed, deadly force is reasonable. *See id.*

Additionally, "the calculus of reasonableness must embody allowance for the
fact that police officers are often forced to make split-second judgments—in
circumstances that are tense, uncertain, and rapidly evolving—about the amount of
force that is necessary in a particular situation." *Kisela v. Hughes*, 584 U.S. 100, 103
(2018) (citation modified). Once Ramirez's Honda was pointed toward Officer Hines,
she had approximately two seconds to react to what she perceived as a deadly threat
of serious physical harm from Ramirez accelerating toward her. (Dash Cam at 00:05–
06; Doc. 44-1 at 22). Officer Foster had, at most, four seconds to react to the red Honda
traveling toward—and striking—Officer Hines. (*Id.* at 00:05–09).

The Eleventh Circuit's decision in *Robinson v. Arrugueta* is instructive. 415
F.3d 1252 (11th Cir. 2005). In *Robinson*, law enforcement officers were attempting to
arrest a suspect in a doughnut shop parking lot when he re-entered his vehicle. *Id.* at
1254. An officer stood between the suspect's vehicle and the car in front of it, at a

distance of "two to four feet at most." *Id.* The officer "verbally identified himself as [p]olice, and told him to put his hands up." *Id.* (citation modified). The suspect "made eye contact with [the officer] but defied the order." *Id.* (citation modified). The suspect then "slowly began to move forward, likely at a speed of around one to two miles per hours." *Id.* With, "at most, 2.72 seconds to react before getting crushed between the two cars," the officer shot the suspect through the car windshield. *Id.* The suspect later died of his injuries, and his mother sued the officer for violation of his Fourth Amendment rights by unreasonably using deadly force. *Id.* The Eleventh Circuit concluded that the officer was entitled to qualified immunity because his use of deadly force was reasonable, and therefore no constitutional violation occurred. *Id.* at 1256. The Eleventh Circuit explained:

> it [is] objectively reasonable for [an officer] to use deadly force against a suspect in an attempt to prevent the suspect's escape and potential harm to others. Here, [the officer] perceived that [the suspect] was attempting to crush him and endanger his life. Because it is constitutionally reasonable for an officer to use deadly force when a suspect is threatening escape and possible harm to others, it is also constitutionally reasonable for an officer to use deadly force when he has probable cause to believe that his own life is in peril. Thus, we conclude that [the officer] is entitled to qualified immunity . . . .

*Id.* (citation modified).

Like the officer in *Robinson*, Officer Hines was standing between two vehicles, Ramirez was disregarding Officer Foster's orders to stop and exit the car, the red Honda was moving toward Officer Hines, and she had to make a split-second decision of whether she could escape before she was hit. *See id.* (finding the second prong of

the objective reasonableness test satisfied where an officer used deadly force after perceiving that his own life was in grave danger); (Dash Cam at 00:03–09; Body Cam at 00:16–39; Doc. 44-1 at 19–21). It follows that she had probable cause to believe her life was in peril. *Robinson*, 415 F.3d at 1256. Likewise, Officer Foster reasonably used deadly force when he believed that Ramirez was fleeing and severely injured Officer Hines between the two vehicles. *Brosseau v. Haugen*, 543 U.S. 194, 200 (2005) (explaining that no Fourth Amendment violation exists where an officer shoots a fleeing suspect who presents a risk to others); (Doc. 43-1 at 65–66).

Plaintiffs argue that the Officers lacked probable cause to believe that Ramirez posed a threat of serious physical harm because "Ramirez was not driving his car in a threatening manner or using it as a deadly weapon." (Doc. 58 at 11). Instead, Plaintiffs contend that Ramirez "did not intend to have any further interaction with [the Officers], which was why he was trying to leave," and he "never intended to hurt anyone." (*Id.* at 16–17, 22). But the relevant inquiry is not whether Ramirez intended to use the car as a deadly weapon, nor whether he was merely "trying to leave." Rather, the Court must determine whether "a reasonable officer could have perceived that [the suspect] was using the [vehicle] as a deadly weapon." *Robinson*, 415 F.3d at 1256. Here, both Officer Hines and Officer Foster reasonably perceived that Ramirez was using the Honda as a deadly weapon when he accelerated toward the narrow space where Officer Hines stood. *See id.*; (Dash Cam at 00:03–10; Body Cam at 00:16–39; Doc. 44-1 at 19–21; Doc. 43-1 at 65–66). Indeed, Ramirez struck Officer Hines with the red Honda, injuring her foot. (Doc. 44-1 at 27). The Court cannot conclude

the Officers' perception was unreasonable. *Robinson*, 415 F.3d at 1256; *McCullough*, 559 F.3d at 1207–08 (finding the use of deadly force reasonable where "in a split-second situation where a suspect . . . drove his truck toward the deputy standing in a nearby lot"); *see also Pace v. Capobianco*, 283 F.3d 1275, 1280, n.12 (11th Cir. 2002) ("[T]he threat of danger to be assessed is not just the threat to officers at the moment, but also to the officers and other persons if the chase went on.").

Plaintiffs also argue that qualified immunity is inappropriate because Officer Hines created her own danger by failing to retreat out of Ramirez's driving path. (Doc. 58 at 19–20). Specifically, Plaintiffs contend that Officer Hines could have moved toward the Motel 6 rooms to her left rather than shuffling right towards her car. (*Id.* at 20; Doc. 57 at 5). But the Supreme Court instructs that plaintiffs "cannot establish a Fourth Amendment violation based merely on bad tactics that result in a deadly confrontation that could have been avoided." *City & Cnty. of San Francisco v. Sheehan*, 575 U.S. 600, 615 (2015); *Robinson*, 415 F.3d at 1256. The *Robinson* decision clarifies that:

> reconsideration after the uncertainty and the excitement of the moment have passed will nearly always reveal that something different could have been done if the future was known before it occurred. Even if in hindsight the facts show that [the officer] perhaps could have escaped unharmed, we conclude that a reasonable officer could have perceived that [the suspect] was using the [car] as a deadly weapon. [The officer] had probable cause to believe that [the suspect] posed a threat of serious physical harm.

*Robinson*, 415 F.3d at 1256. Thus, even if Officer Hines could have avoided danger had she shuffled to her left rather than her right, under this Circuit's precedent, she

is still entitled to qualified immunity because Ramirez took actions that were reasonably perceived as a serious threat. *Id.*

The third objective reasonableness prong considers whether the Officers provided "some warning about the possible use of deadly force." *Vaughan*, 343 F.3d at 1330. Though Officer Foster's verbal command to Ramirez to stop and exit the car did not include a specific warning of deadly force, the Eleventh Circuit has "repeatedly affirmed grants of qualified immunity to officers who used deadly force against armed suspects without giving a warning when a reasonable officer would have believed the threat of harm was imminent." *Powell v. Snook*, 25 F.4th 912, 923 (11th Cir. 2022). Both Officer Hines and Officer Foster believed Ramirez posed an imminent threat of harm—Officer Hines to herself, and Officer Foster to others. (Doc. 43-1 at 48; Doc. 44-1 at 19–21). Thus, the Officers' failure to give an explicit warning that they may use deadly force does not strip them of qualified immunity. *Powell*, 25 F.4th at 923. Because Officer Hines and Officer Foster's use of deadly force was objectively reasonable, no unreasonable seizure occurred to violate Ramirez's Fourth Amendment right. U.S. CONST. amend. IV.

Since Plaintiffs must show a constitutional violation to overcome qualified immunity, the Court need not consider whether that constitutional right was clearly established. *Brooks v. Miller*, 78 F.4th 1267, 1279–80 (11th Cir. 2023) ("[S]ince a plaintiff must show both prongs to overcome qualified immunity, if the prong the court considers first is not satisfied, the court need not consider the other prong because the officer is entitled to qualified immunity, regardless.") (citing *Pearson v.*

15

*Callahan*, 555 U.S. 223, 236 (2009)). But, the Eleventh Circuit has "consistently upheld an officer's use of force and granted qualified immunity in cases where the decedent used or threatened to use his car as a weapon to endanger officers." *Johnson v. Niehus*, 491 F. App'x 945, 952 (11th Cir. 2012) (collecting cases). Suits arising out of the use of deadly force often involve tragic circumstances, and this one is no different. The Court has considered the devastating loss Plaintiffs have experienced as a result of what occurred in this case, but it is bound by precedent to find that Officer Hines and Officer Foster are entitled to qualified immunity.

### CONCLUSION

For these reasons, Defendants' Motion for Summary Judgment (Doc. 48) is **GRANTED**. The Clerk is respectfully **DIRECTED** to enter judgment in favor of Defendants Amelia Hines and Jared Foster and against Plaintiffs Rafael Ramirez and Yolandita Malave, and to **CLOSE** this case.

SO ORDERED, this 26th day of February, 2026.

 

_____
TIFFANY R. JOHNSON
United States District Judge